**UNITED STATES v. ONE CHEVROLET STYLEMASTER SEDAN, etc.**

**Civ. A. No. 3045.**

United States District Court
D. Colorado.

June 8, 1950.

Max M. Bulkeley, United States Attorney, Henry E. Lutz, Assistant United States Attorney, Denver, Colo. for plaintiff, the United States.

A. E. Small, Jr., Denver, Colo., for defendant-claimant Marvin Hyman Ginn.

Kobey, Mitchell & McCarthy, Denver, Colo., for defendant-claimant, Publix Cab Co.

KNOUS, District Judge.

### Findings of Fact

Marvin Hyman Ginn is the owner of the car above described. Preceding the transactions here involved, under a Herdic arrangement, Ginn engaged himself and said automobile in the taxicab service for the Publix Cab Company in Denver, Colorado. As a part of this arrangement the Publix Company installed in the automobile the radiophone and taximeter hereinabove mentioned and had Ginn transfer the record title to the car to the Publix Company as security for the equipment installed by it. The Publix Company dispatches its cabs by means of radio communication between them and its central office. The car involved herein was designated as Publix Cab No. 33 and at all times mentioned herein was driven by Ginn himself.

On the night of November 26, 1949, C. D. Lindsley, Investigator for the Alcohol Tax Unit, accompanied by his wife, engaged another Publix Cab driven by Creighton E. Wilson. While traveling along the

streets of Denver, Lindsley inquired of Wilson, the driver, whether he knew where Lindsley could obtain a bottle of whiskey. Wilson thereupon, by radiophone, contacted the central office and requested the location of Cab No. 33 and, pursuant to the information returned, proceeded to a location near the Vann Hotel at 1544 Welton Street, Denver, Colorado, where Ginn was found awaiting them. The car involved in this libel proceeding was parked nearby.

After some negotiations with Lindsley, Ginn entered the Vann Hotel and soon appeared with a pint bottle of whiskey which for a consideration of $5 he delivered to Lindsley. Admittedly, Ginn had not paid the special tax required of a retail liquor dealer by Section 3253 of the Internal Revenue Code, Title 26 U.S.C.A. § 3253.

Wilson, the taxicab driver, testified that upon a number of occasions, at the request of passengers seeking to purchase whiskey, he had contacted Ginn, usually by a radio call to the central office, who had produced and sold them bottled whiskey in substantially the same manner as was effected in the Lindsley transaction. On several occasions, for diverting customers to him, Ginn paid Wilson a portion of the proceeds on the sale.

On the night of December 3, 1949, Investigator Lindsley, by a telephone call to the central office of the Publix Company, asked that Cab 33 be sent to Seventeenth and Tremont Streets in Denver. In due course Cab 33, driven by Ginn, arrived at this location where Investigator Lindsley and C. F. Preshaw, another Investigator for the Alcohol Tax Unit were waiting. Lindsley asked Ginn whether he could procure a bottle of whiskey for him. Ginn thereupon "wanted to know who told me to call him." Lindsley advised Ginn that, "I was talking to a fellow in a bar and he gave me the cab number and name." Upon being so informed Ginn said "he would take care of me," whereupon Lindsley entered the car involved in this libel proceeding, which was driven by Ginn to a point near the Vann Hotel. Ginn alighted from the car and proceeded into the hotel. In a short time he returned and upon the payment of $5 by Lindsley, Ginn delivered to

him a pint bottle of whiskey. Ginn at the time tried to sell to Lindsley another bottle of whiskey which he had in his possession, offering a "reduced" rate of $8 for the two bottles.

Ginn was then placed under arrest by Investigator Lindsley who took over the operation of the taxicab and returned to Seventeenth and Tremont Streets where Investigator Preshaw had been left waiting. W. E. Lukens, another Investigator of the Alcohol Tax Unit, whose car had been parked near the Vann Hotel, followed the taxicab to the Seventeenth and Tremont rendezvous and the three agents, with Ginn, then returned to the Vann Hotel. Under Ginn's guidance they proceeded to Room 119, of which he was the tenant. On the way to this room Ginn removed from his pockets two bottles of whiskey and delivered them to the officers saying they "may as well have these." Upon arriving at Ginn's room the officials found and seized fifteen pint bottles of whiskey. The fifteen bottles so seized, together with the two bottles surrendered by Ginn, as well as those previously sold by him to Wilson, had been purchased from local retail dealers and were tax paid. Ginn advised Lindsley that he had so procured the liquor seized and in the conversation also stated that he did not know that he was required by law to pay a special tax before reselling it.

Following the visit to Room 119, the car involved was taken into the custody of the officers where it since has remained. In due course an information was filed, to which Ginn later entered a plea of nolo contendere and was sentenced to thirty days in jail, charging that he, "did on or about and between the dates of November 26, 1949 and prior thereto, and December 3, 1949, at Room 119, Vann Hotel, 1544 Welton Street, Denver Colorado, and on the public streets in the vicinity of said premises and in a taxicab owned by him, carry on the business of a retail liquor dealer, and then and there and at all times herein mentioned wilfully failed to pay the special tax as such retail liquor dealer as required by law, in violation of Section 3253 of the Internal Revenue Code (Title 26 U.S.C.)."

On the trial of the libel proceeding Ginn was called to the stand by the Government and admitted that the car mentioned in the information was the same as the one involved in the libel proceeding. However, Ginn did not testify in his own behalf in the libel proceeding.

It is not questioned that the Publix Company is the owner of the radiophone and taximeter. The evidence also shows that these accessories are readily detachable from the car. The evidence disclosed that under the ordinances of the City and County of Denver taxicab drivers are required to have special licenses which are issued under the authority of the Manager of Safety (ex officio Sheriff) only after special investigation as to fitness and moral character by the city authorities. At the time of his employment by the Publix Company, Ginn had such a license. It is also required that the city authorities be notified of the employment of individual taxi drivers by taxicab companies and this procedure was followed by the Publix Company in the employment of Ginn.

### Conclusions of Law

1. The plea of nolo contendere entered by Ginn cannot be considered in disposing of the issues. It is a confession only for the purpose of the criminal prosecution and does not bind the defendant in a civil action for the same wrong. United States v. Plymouth Coupe, D.C., 88 F.Supp. 93; Berlin v. United States, 3 Cir., 14 F.2d 497.

2. A positive violation of the Internal Revenue Law, in this case 26 U.S.C.A. § 3253, must be established as a condition precedent to forfeiture of the libeled items.

Under Section 3253, supra, the failure to pay the tax as a retail liquor dealer, must be wilful. As to this element of the offense, it is said in the case of One 1941 Buick Sedan v. United States, 10 Cir., 158 F.2d 445, 448: "Appellant's admitted noncompliance with the statute is sufficient to create the presumption of 'wilfullness', for every person is presumed to intend the necessary and legitimate consequences of his acts. (Citing cases.) But, this presumption, based upon the mere doing of the forbidden act is rebuttable by evidence or attending circumstances showing or tending to show lack of 'wilfullness'. (Citing cases.)"

Counsel for Ginn argue that his statement to the investigators to the effect that he did not know that the law required him to pay a special tax before making the retail sales proved, together with his cooperativeness in surrendering the liquor, tend to rebut the presumption of wilfulness arising from his unquestioned noncompliance with the statute. In my opinion, any inferences favorable to Ginn arising from his conduct or self-serving statements after his apprehension, are overbalanced and destroyed by the evidence of his guarded inquiry and the requirement of identification of Lindsley, the time-worn preliminaries to dealing in contraband liquor, before making the December third sale.

Although Ginn voluntarily appeared in this libel proceeding as claimant, he did not see fit voluntarily to take the stand to testify in his own behalf as to his conduct, purpose or intent. "His silence may well count against him, as against any other civil litigant." See Kent v. United States, 5 Cir., 157 F.2d 1, 2. The surreptitious and secretive procedures attending the disposal of his wares also, to my mind, unexplained, impute an atmosphere of known illegality to the operation.

I, therefore, have no doubt that under all the evidence Ginn wilfully violated Section 3253 as alleged by the United States, and so conclude as a matter of law.

Since the seized seventeen pints of liquor were directly involved in the commission of the offense, their forfeiture must follow as a matter of course.

The question then remains as to whether the car in question was "intended for use in violating the provisions of * * * the internal-revenue laws," made the basis for forfeiture under 26 U.S.C.A. § 3116. It is undisputed that time and again upon call through the radio receiver installed therein, that Ginn employed the automobile in question as a means of transportation for himself in traveling from

various and sundry locations in Denver to the place where he intended to, and as a matter of fact did, violate Section 3253 of the Internal Revenue Code, supra. Such a utilization of the car was an essential link in Ginn's illegal plan and without it the operation could not have been conducted as it was. The fact that upon occasion the car was legitimately used as a taxicab, is incidental.

A perusal of the authorities indicates that under the circumstances here established, the car must be forfeited. Thus, in United States v. One 1941 Buick Coach, D.C.S.D.Ala., 85 F.Supp. 402, 404, it was held that an automobile used by a seller of nontax-paid distilled spirits to reach the agreed delivery place was subject to forfeiture, although spirits had not been transferred in the automobile. The facts in that case have many points of similarity with those in the case at bar. In his well considered Findings of Fact and Conclusions of Law therein, Judge McDuffie stated: "Such use of the Buick automobile as set forth above was in violation of the Internal Revenue laws and subjected it to forfeiture under the provisions of 26 U.S.C.A. § 3116. United States v. Windle, 8 Cir., 158 F.2d 196; One 1941 Buick Sedan, Motor Number 64286106, et al., v. United States, 10 Cir., 158 F.2d 445; Kent v. United States, 5 Cir., 157 F.2d 1. This statute provides for forfeiture of all property and in all cases where the evidence supports the conclusion that such property is used or intended to be used in violation of the Internal Revenue laws. It is all inclusive. No exception is made in the kind of property included therein nor is there any limitation placed on the manner of the use. Of course, there must be some use, or intention on the part of someone having the property under control to use it, in violation of one of the Internal Revenue laws. It is unnecessary to catalogue or detail the numerous ways and means an automobile or other property may be used or intended to be used in or about a violation of these laws and be subjected to forfeiture. That it was the intent of Congress to subject any property used or intended to be used in violation of the Internal Revenue laws to forfeiture appears clear from the wording of 26 U.S.C.A. § 3116, and the review of the legislative history thereof presented in Judge Joyce's analysis and discussion in the case of United States v. 3935 Cases of Distilled Spirits, D.C., 55 F.Supp. 84. See also United States v. One 1942 Pontiac Sedan Automobile, D.C., 56 F.Supp. 929."

Cases like United States v. One Plymouth Sedan, D.C., 45 F.Supp. 461; United States v. Studebaker Sedan, D.C., 56 F.Supp. 809, and United States v. One 1939 Chevrolet Sedan, D.C., 35 F.Supp. 142, cited by counsel for Ginn, may be distinguished by differences in the facts or the particular statute involved.

I, therefore, conclude that the claimant Ginn is not entitled to remission of the forfeiture of the Chevrolet Stylemaster Sedan, nor of the seventeen pint bottles of tax-paid whiskey involved, but that the same should be condemned and forfeited to the United States of America.

■ 3. With respect to the claim of The Publix Cab Company for remission of the forfeiture of one (1) Raytheon Model UM 15-1 Radiophone and one (1) Model W Glovebox Taximeter installed in said automobile, I conclude:

(1) That the claimant, The Publix Cab Company, is the owner in the above-described accessories and that it acquired such interest in good faith; (2) that The Publix Cab Company had at no time any knowledge or reason to believe that said accessories were being or would be used in the violation of the laws of the United States relating to liquor, and (3) that even if it be considered, which is not determined, that Ginn, a party to the contract under which said accessories were installed in the car here involved, had any record or reputation for violating the laws of the United States or of any state relating to liquor, that The Publix Cab Company, prior to entering into said contract to all intents and purposes, through reliance on the taxi driver's license issued to Ginn by the City and County of Denver and its reporting of his employment to the Manager of Safety of said municipality, met the requirements of subdivision (b) (3) of Section 3617, Title 18 U.S.C.A.

I, therefore, conclude that the claimant, The Publix Cab Company, is entitled to remission of the forfeiture of the above-described accessories and should have the right to remove said accessories from the forfeited automobile without unnecessary injury to the vehicle and within reasonable time.

It is ordered that judgment shall be entered in accordance with the findings of fact and conclusions of law herein made.